UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANA AMOAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 4:14-CV-40181-TSH |
| | ) |
| DENNIS MCKINNEY AND | ) MARCH 10, 2016 |
| SMITH TRANSPORT, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' UNDISPUTED STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants Dennis McKinney and Smith Transport hereby submit their statement of undisputed facts in support of their motion for summary judgment. All referenced support for these facts are attached hereto and incorporated by reference into the defendants' accompanying motion and memorandum of law.

### Undisputed Material Facts

Background of the Parties and Accident

1.    The defendant, Mr. McKinney, is a licensed Commercial Driver, with over 15 years of experience. (McKinney Depo. at pp. 22-23, Exhibit A.)

2.    Presently, and at the time of the accident in question, he is and was employed by Franklin Logistics. (McKinney Depo. at pp. 38-39.)

3.    Franklin Logistics screened and trained Mr. McKinney. (McKinney Depo. at pp. 43-45; Driver Hiring Files, Exhibit B.)

4.      This screening and training included written and road tests, which Mr. McKinney passed.  (*Id*.)

5.      Mr. McKinney is medically cleared to driver tractor trailers and has the necessary medical certificate to do so.  (McKinney Depo. at pp. 31-32; Medical Certificate, Exhibit C.)

6.      Mr. McKinney had not been involved in any vehicular collisions in the fifteen years prior to this accident.  (McKinney Depo. at pp. 30-31; McKinney's Int. Ans. No. 7, Exhibit D; Driving Report, Exhibit E (also part of Exhibit B.)

7.      On October 17, 2014, at approximately 10:25 p.m., Mr. McKinney was driving a tractor trailer on Route 290 Westbound in Worcester.  (*See* State Police Report; McKinney's Int. Ans. No. 17; Trip Reports, Exhibit F; Complaint, Exhibit G.)

8.      Mr. McKinney was transporting paper from Maine to Illinois.  (McKinney Depo. at pp. 57-58; 63; McKinney's Int. Ans. No. 17.)

9.      He left Maine about three hours prior to the accident.  (*See* Driver Daily Log, Exhibit H; Melcher Report Fgs. , p. 18-19 and 89-93 summarizing GPS data, Exhibit I.)

10.      As reflected in his driving log, Mr. McKinney was well within his permitted driving hours limits for the day and week.  (*See* Driver Daily Log; McKinney Depo. pp. 51-52; Smith Depo. pp. 58-60, Exhibit J; Melcher Report at pp. 19-20.)

11.      His daily driving log is maintained electronically and is tied to the tractor trailer's engine to prevent falsification.  (*See*, *e.g.*, Smith Depo. at p. 55, 101, 122-23, 126; *see also* Melcher Report at p. 19.)

12.      Smith Transport also monitors driver hours internally and through a third-party audit to prevent falsification.  (Smith Depo. at pp. 57-58, 79-84, 122, 153-54.)

13.     Smith Transport uses various reports that can be used to confirm a driver's daily log and driving hours and Mr. McKinney's trip reports and backup confirm his daily driving log. (*See id.* and Trip Reports; Smith Depo. pp. 81-84; 153 (referencing deposition exhibits 1, 2 and 10)).

14.     He was not speeding or cited by the State Police for speeding.  (McKinney depo. at p. 86; Police Report, Exhibit K.)

15.     He was not on the phone or otherwise distracted and was not cited by the State Police for being distracted.  (McKinney depo. at p. 88.)

16.     He was aware of his surroundings as he was checking his mirrors and watching to his sides and rear.  (McKinney depo. at pp. 81-83 (observing plaintiff's vehicle), 95 (using mirrors prior to the accident)).

17.     The tractor and trailer were new and in good working order.  (*See* maintenance records, Exhibit L; McKinney depo. at p. 138.)

18.     A copy of the tractor's and trailer's maintenance reports show that they were in good working order and routinely serviced and inspected.  (*See* maintenance records, Exhibit M.)

19.     Mr. McKinney was traveling in a lane to the left of the plaintiff, who was in a separate lane. (McKinney depo. at pp. 127-29; McKinney's Int. Ans. No. 17; Police Report.)

20.     Also on October 17, 2014, at approximately 10:25 p.m., the plaintiff was traveling in his Kia sport utility vehicle on Route 290 Westbound in Worcester.  (See complaint; Amoah Depo. at p. 23, Exhibit M.)

21.     The plaintiff was going to pick up his cousin at Wal-Mart located off of Route 146 in Worcester.  (Amoah Depo. at p. 23, 25; Ofori Depo. at p. 13, Exhibit N.)

22.     The plaintiff was not using his mirrors and was only looking straight ahead. (Amoah Depo. pp. 43-44; Plaintiff Int. Ans. No. 15.)

23.     The plaintiff was cited by the Massachusetts State Police for speeding.  (Amoah Depo. at pp. 62-63; Trooper Depo. pp. 20-21, Exhibit O; Citation, Exhibit P.)

24.     The plaintiff had been on his cell phone with his cousin (who was at Wal-Mart) for at least part of his drive and at some point around the time of the accident.  (Plaintiff's Phone Records, Exhibit Q; Ofori Depo. at pp. 16, 37.)

25.     The plaintiff's medical records reflect that he consumed alcohol that evening and appeared to one medical provider to be intoxicated.  (*See* Report of Dr. Fisher (redacted to exclude protected information) summarizing medical records, Exhibit R.)

26.     The plaintiff's older model vehicle (with over 200,000 miles) had been in prior accidents, including side and rear collisions.  (*See* Melcher Report at pp. 7, 25, discussing Car Fax Report.)

27.     The plaintiff was traveling to the right of Mr. McKinney.  (Police Report; Amoah Depo. at p. 71.)

28.     The plaintiff did not see the tractor trailer before the accident.  (Amoah Depo. at p. 45.)

29.     The plaintiff did not see the tractor trailer in his rearview mirror prior to the accident.  (Amoah Depo. at p. 43.)

30.     The accident happened after the plaintiff attempted to pass in front of the tractor trailer, spun out, struck a median barrier and then bounced into the trailer.  (Police Report, McKinney Depo. at pp. 117-19; Melcher Report at pp. 22-23; McKinney's Int. Ans. No. 17.)

31.     The plaintiff did not see the accident, including whether the tractor-trailer struck his car.  (Amoah Depo. at p. 84.)

32.     The plaintiff has no memory of specifically where along Route 290 the accident took place.  (Amoah Depo. at p. 32.)

33.     The plaintiff does not know specifically how the accident happened.  (Amoah Depo. at p. 72.)  ("Mr. Oyema [plaintiff's counsel]: I just want to clarify, he doesn't really know what happened.")

34.     In his complaint, the plaintiff alleges only that "Defendant Dennis McKinney's inability to safely operate the motor vehicle was the cause of the accident that injured the plaintiff," and that the vehicles collided.  It does not describe what part of the vehicles collided or what Mr. McKinney did that was negligent.  (*See generally* complaint.)

35.     In his interrogatory answers, when asked to identify what the defendants did to cause the accident the plaintiff responded that "After entering route 290 W. Worcester, MA in my 2004 Kia Sorento, the Kia was struck by a Smith Trucking vehicle causing me to lose control striking the Jersey barrier and trailer."  (Plaintiff's Int. Ans. No. 17, Exhibit V.)

36.     In his application for Personal Injury Protection benefits, the plaintiff described the accident differently than a rear-end collision by suggesting that the tractor trailer swerved into his lane.  (Melcher Report at p. 14, PIP application, Exhibit S.)

37.     In a motion to compel, the plaintiff, through his counsel, alleges that the tractor trailer struck the plaintiff's vehicle from behind.  (Docket No. 46, pp. 6-7, Exhibit T.)

38.     The plaintiff admits that he has no evidence to support his allegations of negligence against the defendants.  (Amoah Depo. at pp. 79-80.)

> Q: And for Count 2, Paragraph 15, it says "Defendant Dennis McKinney's inability to safety operate the motor vehicle was the cause of the accident." Do you have any information to support that?
> A: No.
> Q: And Count 1 where it says, "The Defendant, Dennis McKinney and Smith Transport were negligent." Do you have any information to support that?
> A: No, sir.
> Q: So no evidence for that?
> A: No sir.
> Q: So for the allegations in this document [amended complaint with identical allegations as original complaint against the defendants], you just don't have any evidence for these allegations, correct?
> A: No.
> Q: No, you don't have evidence?
> A: No.

(Id.)

> Q: Why do you believe that Smith Transport was negligent?
> Mr. Onyema: Objection.
> A: Because I know the accident wasn't my fault, so that's what I answer.

***

> Q: What do you think the driver did to cause the accident, the driver of the truck?
> Mr. Onyema: Objection. If you know the answer, you can answer.
> A: It's my lawyer would do that so I don't know.

(Id. at pp. 83-84.)

39.     Shortly before the accident, Mr. McKinney was traveling along Route 290 in what was then the right lane. (McKinney Depo. at pp. 127, 129; McKinney's Int. Ans. No. 17.)

40.     When the "right" lane technically ended because of another lane merging in, he was then already in a "middle lane." (McKinney Depo. at pp. 127, 129). "I was in the far right lane, so I could only ride the far right lane until it ends. Big trucks are not allowed in the very first lane so when that right lane ended, then I was already in the middle lane, which is lane two." (Id. at p. 129.) When the accident happened, Mr. McKinney "was in the second lane or the middle lane rather." (Id. at p. 127.) (See also McKinney's Int. Answer No. 17.)

41.    Mr. McKinney's account is consistent with the area of the accident as the right lane does become the middle lane as another lane merges on. (Melcher Report at pp. 5-6, 20-21, figs. 1-35.)

42.    Before that merger or lane drop is a sign reflecting that event. (*Id.*; Trooper Depo. at pp. 18, 32, 37.)

<u>The Location of the Accident Based on the Collision Debris and Other Evidence</u>

43.    The location of the accident was near mile marker 7.8 on Route 290 Westbound in Worcester, Massachusetts. (Melcher Report at pp. 7, 20-21.)

44.    Westbound 290 proceeded through a complicated layout and varied lane arrangement as it traveled through the Worcester area. (*Id.*)

45.    After the off-ramp for Route 190 (Exit 19), there were three westbound through lanes. (*Id.*)

46.    The rightmost lane tapered beginning approximately 1500 feet prior to mile marker 7.8 and was completely terminated by approximately 730 feet prior to mile marker 7.8, leaving two westbound lanes. (*Id.*)

47.    Approximately 500 feet prior to the Burncoat Street onramp connecting with Route 290, there was a posted Merge warning sign. (*Id.* at p. 21, figs. 100, 101.)

48.    The Merge sign was the incorrect sign for that location and suggested that the onramp would merge and end, instead of continuing as an added lane. (*Id.*)

<u>The Damage to the Vehicles</u>

49.    Mr. Melcher describes the damage to the two vehicles in his report. (*Id.* at pp. 7-9, figs. 41-83.)

50.    The Kia sustained severe damage to its front end.  (*Id*. at pp. 7-9, 22-23.)

51.    The Kia had minor damage to the rear-right corner of the plastic bumper cover, with no underlying structural damage.  (*Id*. at pp. 7-9, 22.)

52.    The Kia had a small crack on the rear-left corner near the very bottom of the plastic bumper (and below the underlying structural bumper) which was aged and had experienced attempted repairs.  The adjacent portions of the bumper that extended farthest outward to the rear had no damage.  (*Id*. at p. 8.)

53.    The height and shape of the rear-right damage to the Kia matches the height and shape of the median concrete barrier wall.  (*Id*. at pp. 7-9, 23.)

54.    There was no portion of the front end of the truck that matched any portion of the rear end of the Kia, nor was there any portion of the right side of the truck that matched with any portion of the left side of the Kia.  (*Id*. at pp. 7-9, 23.)

<u>Findings of the Massachusetts State Police</u>

55.    State Trooper Fox investigated the accident scene.  (Trooper Depo. at p. 29.)

56.    Trooper Fox interviewed Mr. McKinney.  (Trooper Depo. at p. 38.)

57.    The plaintiff declined to discuss the matter with Trooper Fox.  (Trooper Depo. at p. 17.)

58.    Trooper Fox has 28 years of investigating automobile accidents.  (Trooper Depo. at pp. 5-6, 28.)

59.    Trooper Fox is familiar with the area of the accident.  (Trooper Depo. at p. 18.)

60.    Trooper Fox reviewed both vehicles after the accident.  (Trooper Depo. at p. 10, 15-16.)

61.     Trooper Fox observed that there was no damage to the front of the tractor trailer. (Trooper Depo. at pp. 41-42.)

62.     Trooper Fox testified that "the only damage to the tractor-trailer was to the left rear portion of the trailer.  Everything was in perfect condition."  (Trooper Depo. at p. 42.)

63.     Trooper Fox observed that the damage to the trailer was on the left side by the wheels.  (Trooper Depo. at p. 15.)

64.     Trooper Fox concluded from his experience and observations of the damages to both vehicles that those damages were not consistent with the tractor trailer hitting the plaintiff's car at all, let alone in a rear-end collision.  (*See*, *e.g.*, Trooper Depo. at pp. 21-22, 74-75.)

> Q: Based on your observations at the scene with the two vehicles, there's nothing to indicate that the tractor-trailer rear-ended the Kia?
>
> A: No, it didn't have that kind of damage.
>
> (Trooper Depo. at pp. 21-22.)
>
> ***
> Q (from plaintiff's counsel): Right.  So wouldn't it be – wouldn't you at least, if you've done this for 28 years, consider to do some investigation or whatever you do to determine – to eliminate that there were no – the truck did not strike the rear?
>
> A: The cab never touched the vehicle.
>
> Q: You could not possibly determine that because –
>
> A: I absolutely can determine that.
>
> Mr. Welnicki: Objection
>
> Q: You are not a certified accident reconstructionist?
>
> A: Don't need to be.  Common sense works pretty well.  The bumper was perfectly –
> The Court Reporter: One at a time, please.
>
> A: The bumper was pristine.  The fenders were pristine.  The tires and lug nuts, which would normally tear up cars on the side, were fine.

There was no damage to the cab whatsoever. The trailer, when it was inspected, had no damage to it at all, except to the left rear portion of the trailer.

(Trooper Depo. at pp. 74-75.)

65.    Trooper Fox concluded from his observations and experience (as well as basic principles of physics) that the plaintiff's vehicles spun out in front of the tractor trailer, struck the median barrier and bounced into the trailer portion of the tractor trailer. (Trooper Depo. at pp. 70-71.)

66.    Trooper Fox testified that "there was no question in my mind [the plaintiff] was traveling faster than the 50 [speed limit], which is why he could not control the vehicle." (Trooper Depo. at pp. 21 – estimating the plaintiff to be "going between 65 and 70.")

67.    Trooper Fox found that neither Mr. McKinney nor Smith Transport was responsible for the accident and that the plaintiff was responsible for the accident. (Trooper Depo. at p. 41-42, 70-71; Police Report.)

Q: Based on your investigation of the crash and all the evidence that you observed at the scene, do you have any reason to believe that the driver of the tractor-trailer was responsible for the accident?

A: No.

Q: In any way?

A: In any way.

Q: Do you believe that Mr. Amoah, the driver of the Kia, was responsible for the accident?

A: I do.

Q: Why was that?

A: For whatever reason, he was – he went out of control without striking anything. He lost control of his vehicle and struck the median barrier. When you start to look at, Okay, what caused the crash, there was no contact between the vehicles prior to the impact, none that could be located.

The only damage to the tractor-trailer was to the left rear portion of the trailer. Everything was in perfect condition.

(Trooper Depo. at pp. 41-42.)

\*\*\*

Q: Everything, based on your experience, confirms what Mr. McKinney was saying; is correct?

A: I had no reason, and I still do not have any reason to doubt what he told me.

(Trooper Depo. at pp. 70-71.)

68.    Trooper Fox also testified that the precise location along the highway, or the layout of onramps and/or merging lanes, was not the important factor in his determinations or alter the fact that the plaintiff was speeding and had spun out of control through no fault of the defendants.  (Trooper Depo. at pp. 69-70.)

<u>The Accident Reconstruction and Expert Conclusions</u>

69.    The plaintiff has not disclosed any experts in this case.  Nor has the plaintiff ever disclosed the identity of any eyewitnesses to the accident.  And the plaintiff has not attempted to depose or challenge Mr. Melcher or his report in any way.  (*See* Plaintiff's Int. Ans. Nos. 3, 4, Plaintiff's Initial Disclosures, Exhibit W.)

70.    The plaintiff's deadline for expert disclosures was November 9, 2015.  (Docket No. 37.)  The plaintiff did have someone holding himself out as an investigator or expert at the joint inspections.  (Melcher Report at 7-9.)  The plaintiff's counsel also indicated during litigation that he had additional experts working on this matter.  (Smith Transport Depo. at p. 107.)  Yet, the plaintiff has not disclosed or even identified those persons as testifying experts, let alone disclosed their opinions.

71.    The defendants timely disclosed an accident reconstruction expert, a certified Public Engineer who specializes in mechanical, transportation and forensic engineering.  (See generally Melcher Report; see also Melcher CV produced to plaintiff, Exhibit U.)

72.    The expert's qualifications are attached hereto and incorporated herein.  (*Id*.)

73.    The expert obtained information through a review both vehicles at joint inspections at which the plaintiff had s or investigators present.  (Melcher Report at pp. 7-9.)

74.    The expert also obtained all repair and maintenance logs for the tractor trailer that show that the tractor was not repaired prior to the joint inspection.  (Maintenance records; Melcher Report at p. 25.)

75.    The expert also obtained information through a review of the accident scene. (Melcher Report at pp. 7-9.)

76.    The expert reviewed the testimony of the parties and Trooper Fox and reviewed other documents produced during this litigation.  (Melcher Report at pp. 17, 25.)

77.    The expert concluded from the evidence that the accident did not occur as a result of a rear-end collision.  (Melcher Report at pp. 3, 22-24.)

78.    The expert concluded from the evidence that the tractor trailer did not strike the plaintiff's vehicle.  (*Id*.)

79.    More specifically, the expert has stated the following in his report:

a.    Based on the GPS data and driver logs, Mr. McKinney had operated the vehicle at the appropriate average speeds on the date of the accident and was in full compliance with Federal daily and weekly hours-of-service criteria at the time the accident occurred.  (Melcher Report at Conclusion 1.)

b.    When the plaintiff's vehicle approached the collision area and then his ramp joined Route 290, it was farther west (to the right) of the tractor trailer and was traveling faster than the tractor trailer.  (*Id*. at Conclusion 6.)

c. The plaintiff lost control of his vehicle and traveled diagonally to the left across all three travel lanes and the left paved shoulder to collide head-on into the left concrete median barrier wall. The plaintiff's vehicle rotated as a result of this wall contact, experienced a secondary contact between its rear-right corner and the barrier wall, then rebounded into the westbound travel lanes. (*Id.* at Conclusion 7.)

d. There was no physical contact between the tractor trailer and the plaintiff's vehicle prior to the plaintiff's loss of control and initial collision into the median barrier wall. (*Id.* at Conclusion 8.)

e. After the plaintiff's vehicle rebounded from the barrier wall, its front end collided with the left-rear axle wheels, tires, and cargo box of the tractor trailer. (*Id.* at Conclusion 9.)

f. Mr. McKinney was consistent throughout his deposition and interrogatory testimony about his approach path to and the actual collision location. (*Id.* at p. 21.)

g. The absence of any initial contact between the tractor trailer and the plaintiff's vehicle was consistent with both drivers' testimony. (*Id.* at p. 23.)

h. The damage to the right-rear bumper of the Kia was not structural and only cracked plastic, its height and other features matched with the median barrier. It was inconsistent with any alleged impact with any part of the truck. (*Id.* at pp. 8, 22)

i. The damage to the left-rear bumper of the Kia was pre-existing and had been previously repaired and was a small crack of the plastic. It was inconsistent with any alleged impact with any part of the truck. (*Id.* at p. 8.)

j. The plaintiff's vehicle had over 200,000 miles and had been involved in previous collisions, including a rear-end collision and a side-impact collision. (*Id.* at pp. 7, 23.)

k. After lining up and comparing the physical evidence including any damage on the two vehicles, the only collision between two was after the plaintiff's vehicle hit the median barrier; "***the laws of physics and the physical evidence are conclusive to a reasonable degree of engineering certainty that there was no other collision that occurred between the [tractor] and the [plaintiff's vehicle].***" (*Id.* at p. 23.)

80. The expert has made his conclusions and given his opinions based on a reasonable degree of scientific certainty. (Melcher Report at pp. 2, 23.)

**<u>Summary of Referenced Exhibits</u>**

Exhibit 1 – Affidavit of Attorney Matthew C. Welnicki

Exhibit A – Deposition of Dennis McKinney

     Pages: 22-23, 31-32, 38-39, 51-52, 57-58, 63, 81-83, 86-88, 95, 127-29, 138

Exhibit B – Mr. McKinney's personnel file and hiring records

Exhibit C – Mr. McKinney's Medical Certificate

Exhibit D – Mr. McKinney's Answers to Interrogatories

Exhibit E – Mr. McKinney's Driving Record

Exhibit F – Mr. McKinney's Trip Reports

Exhibit G – Plaintiff's Complaint

Exhibit H – Mr. McKinney's Driving Log

Exhibit I – Report of Professional Engineer Daniel Melcher

Exhibit J – Deposition of Smith Transport's Rule 30(b)(6) Designee

     Pages: 55-58, 79-84, 101, 122-23, 126, 153-54

Exhibit K – Investigating State Trooper's Report

Exhibit L – Maintenance Logs for Tractor and Trailer

Exhibit M – Deposition of Nana Amoah

     Pages: 23, 25, 33, 43-45, 62-63, 71-72, 79-80, 83-84

Exhibit N – Deposition of Comfort Ofori

     Pages: 13, 16, 37

Exhibit O – Deposition of Trooper Richard Fox

     Pages: 5-6, 10, 15-18, 20-22, 28-29, 32, 37-38, 41-42, 70-72

Exhibit P – Citation Issued to Nana Amoah

Exhibit Q – Plaintiff's Cell Phone Records

Exhibit R – Redacted Report from Dr. Fisher

Exhibit S – Plaintiff's PIP Application

Exhibit T – Plaintiff's Motion to Compel

Exhibit U – CV of Daniel Melcher

Exhibit V – Plaintiff's Answers to Interrogatories

Defendants,

Dennis McKinney and
Smith Transport, Inc.,

By its attorneys,


/s/Matthew C. Welnicki
Matthew C. Welnicki
BBO: #647104
mwelnicki@melicklaw.com
Melick & Porter, LLP
One Liberty Square, 7th Floor
Boston, Massachusetts 02109
Telephone:  (617) 523-6200
Dated: March __, 2016          Facsimile:  (617) 523-8130

**CERTIFICATE OF SERVICE**

I, Matthew C. Welnicki, hereby certify that I have served a copy of this document on the above date through the ECF system on plaintiff's counsel of record.


/s/Matthew C. Welnicki
Matthew C. Welnicki

Dated: March __, 2016