UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANA AMOAH, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) 4:14-CV-40181-TSH <br> ) |
| DENNIS MCKINNEY AND SMITH TRANSPORT, | ) <br> ) JUNE 15, 2016 <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REFILED MOTION TO STRIKE CERTAIN EXHIBITS AND PORTIONS OF PLAINTIFF'S STATEMENT OF FACTS IN OPPOSITION TO SUMMARY JUDGMENT

As an initial matter, the defendants note that this submission is primarily a refiling of their prior motion to strike (Docket No. 61), which this Court denied without prejudice on June 8, 2016. (Docket No. 97.) The defendants make this refiling to comply with this Court's directions and suggestions. The defendants also note that this Court's Order denying the plaintiff's motion to extend the tracking order (Docket No. 96) is relevant to the arguments the defendants made in their original motion and repeat in this refiling. The defendants will reference this Court's Order as appropriate. And the defendants have separated their reply memorandum from this motion to strike and are filing them as distinct documents. While some of the same arguments are appropriate for both submissions, the defendants have made efforts to narrow and shorten both submissions by removing duplication.

The defendants also note that they filed a motion to strike the plaintiff's statement of facts that he filed in connection with his own motion for summary judgment. (Docket No. 87

That motion to strike, filed on May 6, 2016, is based on similar grounds and contains a Local Rule 7.1 Certificate. The plaintiff has not opposed that related motion to strike.

Finally, the defendants point out that they include a Local Rule 7.1 Certificate with this motion. As that Certificate demonstrates, there is an apparent disagreement between the parties as to what is at issue in this present motion. After conferencing, the defendants point out that they are not claiming that all of the plaintiff's arguments about this case should be stricken entirely from his papers. Rather, the defendants simply ask that the plaintiff's arguments remain in the argument sections of his submissions and his own interpretations of the evidence be separated from the actual evidence. Arguments should be stricken from "statements of facts." To the extent possible, this Court can consider whether the plaintiff's arguments are supported by the record and accept or reject those arguments. Also as the Certificate reflects, the defendants have attempted in good faith to narrow the issues even further. While the plaintiff has indicated, vaguely, that he wants to somehow "comply," he has not accepted the defendants' invitation to explain what he means by this. Instead, it appears that the plaintiff is suggesting that he wants to submit a new set of summary judgment submissions.

There is a difference between the defendants' motion to strike what the plaintiff has already submitted and a motion by the plaintiff to add to or supplement the record with some yet-undisclosed evidence (with a showing of why the submission is late). The plaintiff has been aware of the defendants' arguments for months now and his previous approach was to file his own affirmative summary judgment motion. He has had at least two opportunities to develop a factual record. And sorting out what the plaintiff now wants in the record is compounded by the fact that he has not actually responded to the defendants' Rule 56.1 submission in a way that is consistent with the Rule.

**Background**

The procedural and substantive background of this case is set forth in greater detail in the defendants' numbered statement of facts and their memorandum of law in support of their motion for summary judgment. Only the relevant background pertaining to this present motion will be repeated.

This case was commenced by the plaintiff in Worcester Superior Court a few months after the accident in question and the defendants timely removed it to this Court. The plaintiff's complaint is limited to counts of negligence against Mr. McKinney and Smith Transport. (*See* Complaint.) It does not include an allegation of negligence per se. (*Id.*) It does not allege, as a basis of negligence, that the defendants violated any state or federal statutes or regulations. (*Id.*) It does not specify in any way how either defendant was allegedly negligent. (*Id.*) Similarly, throughout discovery in this case, the plaintiff did not identify any reasons why he believed that the defendants were negligent. (*See* SoF at ¶¶ 31-35.)

In December 2014, the parties conducted joint inspections of the vehicles involved in the accident. Present at these inspections was Mr. Phil Pantano, an investigator retained by the plaintiff. (*See* Plaintiff's SJ Opposition Exhibit H.) On March 10, 2015, the parties and this Court agreed on a scheduling order with the plaintiff's expert disclosures being due on October 9, 2015. (Docket No. 11.) The plaintiff thereafter responded to discovery, including interrogatories, and made his initial disclosures. (Defendants' Summary Judgment Exhibits V and W.) The plaintiff did not disclose any expert witnesses through that discovery. (*Id.*) On July 30, 2015, the plaintiff, with the defendants assent, moved to enlarge the tracking order. (Docket No. 35.) On August 21, 2015, this Court allowed that motion which set the following

expert schedule: plaintiff's experts disclosed by December 9, 2015, plaintiff's experts deposed by January 9, 2016, Defendants' experts disclosed by February 9, 2016 and Defendants' experts deposed by March 9, 2016.  (Docket No. 37.)

Prior to the close of fact discovery, plaintiff filed motions to compel, which were denied. (Docket No. 40.)  The defendants also moved to compel further response to requests to admit and certain damages documents from the plaintiff.  (Docket Nos. 41 and 43.)  *After* the close of fact discovery, the plaintiff filed a second motion to compel documents from the defendants.  The plaintiff did not file any oppositions to the defendants' motions.  The defendants opposed the plaintiff's motion by pointing out that the requested documents had been produced.  (Docket No. 47.)  On November 10, 2015, this Court entered the following Order canceling a status conference only: "ELECTRONIC ORDER entered. ORDER Canceling deadline.  The status conference scheduled for today, (11/10/15) is hereby canceled.  The Court will reschedule after all pending motions are ripe."  (Docket No. 45.)  This Court entered no other orders canceling the tracking order deadlines, including expert deadlines.  The plaintiff canceled two agreed-upon and scheduled independent medical examinations and the defendants reserved their right to supplement any medical expert disclosures.  (*See* Defendants' Summary Judgment Exhibit R.) Also, the defendants, in an effort to resolve any discovery disputes, invited the plaintiff to work with his experts, if any, to identify what additional information they might need.  (*See*, *e.g.*, Docket No. 46, p. 7.)

On February 9, 2016, the defendants disclosed their experts in accordance with Fed. R. Civ. P. 26.  This included the Rule 26(a)(2) disclosure of Daniel Melcher as to the accident reconstruction and Dr. Fisher as a medical expert.  This disclosure was accompanied by the defendants' production of the materials required by Fed. R. Civ. P. 26.  (*See* Exhibit 1 to this

4

Motion.)[1]  The plaintiff did not attempt to depose any of the defendants' experts or disclose any experts in rebuttal.  On March 10, 2016, after the time period for deposing the defendants' experts expired, the defendants filed their motion for summary judgment, together with a memorandum, exhibits and statement of facts.  (Docket Nos. 52, 53, 54.)  On March 31, 2016, the plaintiff filed an opposition to the defendants' summary judgment motion.

Included with the plaintiff's opposition are: 1) the unsigned statement of "preliminary investigative results" of Mr. Pantano dated 12/28/2014 and a March 23, 2016 letter from Dr. Dennis Andrews.  (Plaintiff's SJ Opposition Exhibits H and J.)  This was the first time the plaintiff produced these documents and neither of these individuals has been disclosed as a potential trial expert.  Neither document is accompanied by a production of the documents references information reviewed and relied on by the purported author; nor does either document incorporate such information (or photographs referenced).  Neither author cites a need for particular information or discovery materials in order to complete or supplement their work.

Also included with the plaintiff's opposition is a separate memorandum of equivalent length.  The opposition contains a "Statement of Facts" and the memorandum includes a "Factual Background" section.  (Docket No. 56 – original entry number, refiled by plaintiff as No. 58.)  Both the plaintiff's "Statement of Facts" and his "Factual Background" are in narrative form; neither addresses the numbered paragraphs of the defendants' statement of facts.  Both the plaintiff's "Statement of Facts" and his "Factual Background" contain arguments, conclusions and other statements without citations to the record.

---

[1] For clarity, the defendants have numbered the exhibits to this refiling.

5

**Argument**

I.  **The Plaintiff's Statements of Fact Do Not Comply With Local Rule 56.1 Because They Are Arguments, Opinions, Characterizations And Not Supported By Citations To The Evidence.**

Local Rule 56.1 establishes a simple process through which the parties are to present the summary judgment record for this Court. The moving party submits a statement of material facts it contends are undisputed. The moving party needs to support those facts with citations to admissible evidence. The non-moving party then has the burden of disputing any facts, also with citations to admissible evidence. If the non-moving party does not property dispute a particular fact put forth by the moving party, or fails to cite to admissible evidence as support, that particular fact is deemed admitted for the purpose of the motion.

The purpose of this exercise to make it easier for this Court to determine if there are any disputes of *material* fact that warrant the case going to the jury. Therefore, it is inappropriate, and completely unhelpful, for the non-moving party to respond to a statement of fact by relying only on arguments, conclusions and personal characterizations of the evidence. It is also inappropriate, and completely unhelpful, for the non-moving party to rely on in admissible evidence or even evidence that has not been produced in discovery. *Brown v. Armstrong*, 957 F. Supp. 1293, 1297 (D. Mass. 1997)(emphasis in original), quoting *Vasapolli v. Rostoff*, 864 F. Supp. 215, 218 (D. Mass. 1993). A non-moving party cannot respond to the moving party's numbered factual statements (with clear citations to the record) with only a narrative of unsupported conclusory statements of law and fact about the case in general. *Id*. Such an improper approach "generates a lot of dust, . . . [but] it does not further the goal of sharply focusing the areas of dispute." *Id*. The remedy for this is set forth in Local Rule 56.1; it is to deem the moving party's facts as admitted for the purpose of the motion.

Here, the plaintiff has filed both an opposition and a memorandum. He includes in these documents sections titled "Statement of Facts" and "factual background." Neither of these two sections address the defendants' numbered statements of undisputed facts. Instead, they are both narratives that go on for paragraphs and pages without citations to any evidence. And the vast majority of these sections are nothing more than the plaintiff's arguments about this case. Each such statement without support by admissible evidence should be stricken from the summary judgment record. Each such "statement" that is nothing more than an argument, assumption, conclusion, characterization or the like should also be stricken.

What should also be stricken are the several instances where the plaintiff's "statements" about the facts do not comport with the evidence to which they cite. And there are several such instances. For example, plaintiff repeatedly refers to Mr. McKinney's "testimony" to Trooper Fox. (*See*, *e.g.*, Plaintiff's "Opposition" at p. 8; Plaintiff's "Memorandum" at p. 5.) But the document referenced here is the police report that was prepared by Trooper Fox after the accident and based on his own (Trooper Fox's) notes. (Trooper Depo. at p. 62, attached as Exhibit 2.) The police report does not contain Mr. McKinney's sworn statement or even a signed statement; Mr. McKinney did not prepare the report or that narrative and did not review the narrative before Trooper Fox included it in his report (which Mr. McKinney also did not review). (McKinney Depo., Exhibit 3, at pp. 145-47.) At the end of the day, Trooper Fox's descriptions are not inconsistent with Mr. McKinney's actual testimony. (*Id*. at pp. 128-29, explaining further the context of the police report.) But the incorrect characterizations made by the plaintiff cannot be used by him to advance one of his smoke and mirrors arguments.

Another example is where the plaintiff boldly states that Mr. McKinney "admitted in his deposition, that it was dark at night, that he could not see." (Plaintiff's Memorandum at p. 12, citing McKinney Depo. at p. 84.) What Mr. McKinney testified to was actually as follows:

A: Oh, yes, he was merging.

Q: He was not on 290, but he was merging onto 290?

A: Okay.

Q: Is that your testimony?

A: No, he was merging.

MR. WELNICKI: Why don't we have the question read back so he understands the question. (The reporter read the record back as requested.)

Q: If you're merging, are you on 290?

A: Well, after looking at the map and looking at the area, I guess you could call that a side, off side road. I couldn't see that at night the first time, but I had an opportunity to see it during the daylight.

Q: So your story was a little different –

MR. WELNICKI: Objection.

Q: -- before because you didn't see it properly.

MR. WELNICKI: Objection.

A: No.

MR. WELNICKI: Objection to reference to a story before.

Q: What do you mean that you didn't see it because it was night?

A: I could see all around me and I could see from the corner of my eye another vehicle driving alongside, whether you call that a side road, off road, a merge on, I could see another vehicle over there driving alongside, not next to me because there is a gap.

(McKinney Depo. at pp. 84-85.) There is certainly a big difference between the plaintiff's generalized claim that Mr. McKinney couldn't see in the dark and his testimony that he couldn't

8

tell whether a travel way to his right could be characterized as a "side road," "off road" or "merge on."

And then, of course, there are the argumentative and speculative statements by the plaintiff about the discovery schedule in this case.  The plaintiff makes repeated assertions about what the defendants' counsel, he and his client (without affidavits) and this Court believed and intended.  But the only thing to which he cites is this Court's November 10, 2015 Order canceling a singular event, the status conference that day.  This Court has rejected the plaintiff's argument on this issue.  (Docket No. 96.)

With respect to the plaintiff's new allegations concerning Mr. McKinney's vision (which were not made in any pleading or discovery response and are based on records obtained from an untimely subpoena), the "evidence" offered by the plaintiff should not be admissible.  As discussed in the reply brief, the very medical records to which the plaintiff points shows that Mr. McKinney's uncorrected vision is perfectly fine for driving.  (Plaintiff's SJ Opposition Exhibit B and Exhibit 4 to this motion.)  Indeed, his Commercial Drivers Licenses even indicates that.  Simply because Mr. McKinney's vision was 20/13 (better than 20/20) when he wore reading glasses or because a medical qualification card has a box checked does not mean that Mr. McKinney violated any statute, regulation or other law.  The plaintiff offers no expert or other evidence to show that Mr. McKinney was actually not qualified to drive.  The existence of the endorsement on that one card (which is contrary to Mr. McKinney's driver's license, earlier and later cards and other parts of his medical records) is certainly not evidence of negligence *per se*, and is not admissible to the ultimate issue of causation (which vehicle made first contact with the other).  *Falvey v. Hamelburg*, 347 Mass. 430, 435 (1964); *Roberts v. Southwick*, 415 Mass. 465, 477 (1993) (concurring opinion) (*see also* Plaintiff's SJ Opposition Exhibit B and Exhibit 4 to

this motion). This Court should not and need not consider selective portions of the hearsay statements on a medical qualification card (prepared by a medical assistant) – especially when the record as a whole shows no real evidence that Mr. McKinney needed corrective lenses to drive.[2]

The defendants take the position that the entirety of the plaintiff's statements of fact be stricken because it fails to comply with Local Rule 56.1. This is warranted out of fairness and to eliminate the need for this Court to parse through the confusing narratives, which combine argument, speculation mischaracterizations of the evidence. However, in the event that this Court intends to review the plaintiff's statements in an effort to strike only portions of it, the defendants have attached their proposed "redlined" revision of the plaintiff's statements. (*See* Exhibit 5 to this Motion.) In submitting this revision, the defendants are simply setting forth what may be considered in comparison to their own statements of facts. The defendants also note that they do agree with some of the unsupported background statements included in the plaintiff's papers; but those background facts are also included in the defendants' statement of facts so are not in dispute and need not be considered for this exercise.

The end result of any exercise of eliminating the unsupported and inadmissible portions of the plaintiff's submissions, whether done by the defendants or this Court, is that almost all of the "factual statements" made by the plaintiff should not be considered. What little remains are

---

[2] In their reply, the defendants point out the three reasons why the plaintiff's negligence per se argument, raised now for the first time, fails. First, negligence per se is not recognized under Massachusetts law and has been rejected by this very Court. *Provost v. Saxon Mortg. Services, Inc.*, 2012 WL 1065481, at * 3 (D. Mass. March 27, 2012)(Hillman, M.J.). Second, this issue here is not whether Mr. McKinney drove without a valid card (although he did), but whether there is any admissible evidence that something to do with his qualifications actually caused the accident (which there is not). Third, as discussed above, the records on which the plaintiff relies as well as Mr. McKinney commercial driver's license shows that he is not restricted by corrective lenses because his uncorrected vision is 20/25 even though his corrected vision (with reading glasses) is 20/13. Fourth, it was obtained from a subpoena served after the close of discovery and while the defendants' motion for a protective order was pending. (See Docket No. 47.) Indeed, plaintiff never requested Mr. McKinney's medical records from Smith Transport and made no document requests at all to Mr. McKinney.

the statements that are consistent with the defendants' arguments as to why they are entitled to judgment as a matter of law.

### II.     The Plaintiff's "Expert Disclosures" Should Be Stricken Because They Are Late, Inadequate And Do Not Comply with Rule 26.

The plaintiff has made an attempt to provide "expert disclosures" for the first time through his opposition to the defendant's motion for summary judgment.  His expert disclosures, however, were due months ago, on December 9, 2015, and he failed to make them at that time.  They should not be stricken from the summary judgment record.

The plaintiff's reason why he did not disclose his experts earlier is his counsel's personal belief that this Court canceled *all* disclosure deadlines "on or about December 2015."  But the only cancellation by this Court was on November 10, 2015, when it stated "ORDER Canceling Deadline. The status conference scheduled for today, (11/10/15) is hereby canceled."  This order, referring exclusively to a singular event, makes no reference to any other scheduling changes and the docket itself reflects none.  Although the plaintiff argues that his counsel read this order to mean something different, he offers no evidence, by affidavit or otherwise, to support such an argument.

Essentially, the plaintiff suggests that this Court intended to create a tracking order with open-ended deadlines.  Yet, the plaintiff has not filed any submissions seeking clarification or extensions.  He did not do so even as each scheduled deadline passed and the defendants made their expert disclosures (a month prior to filing the summary judgment motion).

This Court has rejected all of the plaintiff's excuses about timing in its recent Order.  (*See* Docket No. 96; s*ee also* Docket No. 82.)

11

The plaintiff's argument is especially curious given that he has filed his own summary judgment motion.  With nothing having changed since discovery closed, the plaintiff now claims that he can indeed rely on the experts he disclosed.  His alternating positions that additional discovery was needed and no more discovery is needed are at odds with each other and demonstrate why his late disclosures should not be excused.

The situation here is similar to the situation in *Cavanagh v. Taranto*, where the Massachusetts District Court also precluded late-disclosed experts; in fact, the nature of the plaintiff's disclosures here is even more concerning.  95 F. Supp. 3d 220 (2015).  In *Cavanagh*, unlike here, the plaintiff actually served incomplete, inadequate draft expert disclosures prior to his expert deadline.  Then in response to a summary judgment motion he attempted to supplement his disclosures with more complete versions (although still unsigned, lacking a report and without the exhibits and documents required by Rule 26(a)(2)(B)).  The excuse given by the plaintiff there was that he was expecting additional discovery.

The precluded the plaintiff's experts at the summary judgment stage and rejected the plaintiff's argument that his late disclosure was justified.  The court made some important rulings that are instructive here:

- The court found that it was unfair to the defendant who had based his summary judgment and litigation strategy on a record that did not include the plaintiff's proposed expert disclosures.  *Id*. at 230, citing *Cranberry Commons, Ltd. v. Orograin Bakeries, Inc.*, 2013 WL 5441571, at *3 (D. Mass. 2013).

- The court found that the lack of receipt of discovery does not excuse the timely disclosure of experts; the party should make disclosures subject to supplementation or request a specific extension.  *Id*. at 229-30, citing *Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002) and *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 78 (D. Mass. 2008).

- The court found that delay is not justified or harmless when the ultimate disclosure occurs after the close of discovery when the other party has no means to explore and challenge the basis of the late-disclosed evidence.  *Id*., citing *AVX Corp.*, supra.

- The court found that there was no reason why the plaintiff could not specifically request an extension or clarification of the deadlines. *Id*. at 229.

- And the court ultimately found that the disclosures themselves were wholly inadequate (both in form and substance) to be considered as part of the summary judgment record. *Id*. at p. 231.

Again, the plaintiff in Cavanagh did more than the plaintiff has done here and the court agreed that preclusion was appropriate.[3] *See also Alves v. Mazda Motor of America, Inc.*, 448 F. Supp. 2d 285, 294-95 (D. Mass. 2006) (granting summary judgment for defendants and finding that plaintiff's disclosures must be precluded where the plaintiff made them three-months after the deadline and only in response to defendants' raising of the issue of lack of experts; complaint about needing discovery absent a request for extension not a viable excuse).

Here, the defendants have litigated this case based on the record developed during discovery. In fact, all parties have. To allow the plaintiff to offer expert witnesses only in response to a summary judgment motion would be unfair and prejudicial to the defendants. The plaintiff offers no good reason, and indeed points to no excusable neglect, why his very limited disclosures are late.

Even if this Court were to excuse the lateness of the plaintiff's disclosures, they are wholly inadequate to support the opposition argument. The first disclosure, Mr. Pantano's unsigned "report," includes only "Preliminary Investigative Results," not stated with any reasonable degree of scientific certainty and is dated November 28, 2014. Thus, it was

---

[3] At this time, the plaintiff has not yet disclosed any medical experts, nor has he produced all of his medical or financial information that has been requested. This issue is different than the issue of liability. With respect to damages, the defendants can appreciate that the plaintiff continues to treat. Ongoing treatment often requires medical and damages experts to supplement and revise their opinions. But, the plaintiff still should disclose medical and damages expert opinions in accordance with the applicable deadlines, even if supplementation becomes necessary. Without the plaintiff making such expert disclosures, the defendants really have nothing to which to respond. Similarly, the plaintiff here has canceled two scheduled agreed-upon medical examinations, further impairing their ability to disclose their own expert witnesses on these issues. Nonetheless, what the defendants have

completed before the relevant depositions and other discovery. The second disclosure, Dr. Andrews's three-page letter, includes only a bare-bones conclusion based on a limited review.

Neither of the plaintiff's disclosures satisfy the well-establish *Daubert* standard and would not provide sufficient grounds for trial testimony. Lacking in each disclosure is any discussion of the methodology or analysis employed. There is no reference as to how these "experts" went about lining up the damage to the plaintiff's vehicle with the median barrier or the trailer it later struck. There are no references to figures or specific photographs on which these "experts" have relied. The disclosures were not accompanied by the production of materials required by Rule 26. And the disclosures really do nothing more than suggest, not state with any degree of certainty, that the ultimate general conclusion that the plaintiff wants them to reach, that this was a rear-end collision.

Like with timeliness, the inadequacy of the plaintiff's "disclosures" is equally prejudicial. The defendants have not had the opportunity to understand the basis for these "expert" opinions. In reality, the plaintiff does not even offer and "expert" opinion that supports his case. Instead, he identifies two individuals who he claims are experts that might, or might not, be useful at trial. These deficiencies, together with the timing, prejudices the defendants' ability to respond in any meaningful way. This is why those "disclosures" must be stricken and not considered as part of the record.

## Conclusion

WHEREFORE, the defendants request that this Court strike the plaintiff's "statements of fact" and related supporting "evidence", including, but not limited to, his purported "expert disclosures."

---

done is to make what expert disclosures they can at this point and noted where supplementation might be necessary and specifically what other discovery would relate to any supplementation. (*See* Exhibit 1 to this Motion.)

14

|  |  |
|---|---|
|  | Defendants, |
|  | Dennis McKinney and Smith Transport, Inc., |
|  | By their attorneys, |
|  | /s/Matthew C. Welnicki<br>Matthew C. Welnicki<br>BBO: #647104<br>mwelnicki@melicklaw.com<br>Melick & Porter, LLP<br>One Liberty Square, 7th Floor<br>Boston, Massachusetts 02109<br>Telephone:  (617) 523-6200 |
| Dated: June 15, 2016 | Facsimile:  (617) 523-8130 |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

      I, Matthew C. Welnicki, hereby certify that I have complied with Local Rule 7.1 in an effort to resolve or narrow the disputes raised by this motion.  Prior to originally filing this motion, I had communications with plaintiff's counsel about issues raised herein including the fact that he had not disclosed experts by the court's deadlines.  Those are documents in an exhibit submitted by the plaintiff in connection with his motion to extend the tracking order.  (See Docket No. 83-5.)  Then, on May 8, 2016, I sent an email to plaintiff's counsel specifically identifying the reasons why I believed his statements of facts to be deficient.  I requested that he remove those deficient statements from his "fact" sections.  Prior to doing so, the plaintiff had the opportunity to review the original version of the above motion.  The plaintiff and defendant also had communications about most of these issues in advance of my filing the defendants' related motion to strike the plaintiff's statements of fact in support of his own summary judgment motion.  That motion to strike is Docket No. 87; it contains a Local Rule 7.1 Certificate.

On May 9, 2016, around 1 p.m., I had a telephone conference with counsel for the plaintiff, Kenneth Onyema. I initiated this call through my email of the day prior. In that call, Attorney Onyema and I discussed the impact of this Court's recent order and a proposal that Attorney Onyema emailed to me earlier in the day. Attorney Onyema's position was that "[he] still [has] to oppose [defendants'] Summary Judgment Motion." He requested that I allow him time to supplement or amend his own statements of fact, presumably including his expert disclosures. However, he did not identify anything specific that he wanted to supplement or amend. I pointed out that the plaintiff has also filed his own summary judgment motion and statement of facts related to that motion.

I also conveyed the defendants' position that they are not seeking to strike the plaintiff's *arguments* altogether, but rather to strike those arguments to the extent they are represented as facts without supporting admissible evidence. Those arguments belong in the argument section of a memorandum. And I conveyed the position that I could not agree to simply restart the summary judgment stage of this case. At the end of the call, it was clear that the parties could not resolve their differences.

Following that call, Attorney Onyema and I had further email exchanges. As I mention in my memorandum, I explained that I am not seeking to strike arguments from his memorandum altogether, but they should not be called statements of fact. I also explained that I would be willing to consider any specific alternative proposal he might have. But it is my position that allowing general amendments or supplementation of the record at this stage requires a motion filed by the plaintiff. Likewise, I explained my position that there is a difference between moving to strike what he has already submitted with adding to or changing what he has submitted. While the plaintiff has only stated generally that he wants time to "comply," having not received any specific proposal as to this present motion (as opposed to a motion by plaintiff to supplement or amend), I have filed this motion. A copy of the related email communications is attached as an exhibit hereo.

\_\_\_\_/s/Matthew C. Welnicki\_\_\_\_

## CERTIFICATE OF SERVICE

I, Matthew C. Welnicki, hereby certify that I have served a copy of this document on all parties of record through this Court's ECF system.

/s/Matthew C. Welnicki
Matthew C. Welnicki

Dated: June 15, 2016