## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NANA AMOAH                              )
                                        )
        Plaintiff,              )
                                        )
                                        )
      v.                          )      **CIVIL ACTION**
                                        )      **NO. 4:14-40181-TSH**
                                        )
DENNIS MCKINNEY and                     )
SMITH TRANSPORT                         )
                                        )
        Defendants.            )
_____ )

**September 2, 2016**

## REPORT AND RECOMMENDATION

Hennessy, M.J.

      The Honorable Timothy S. Hillman has referred to this court the following motions concerning this car accident case: defendants Dennis McKinney and Smith Transport's ("defendants") motion for summary judgment (Docket # 52-54); plaintiff Nana Amoah's ("plaintiff") motion for summary judgment (Docket # 65, 66, 67, 70, 75); defendants' motion to strike plaintiff's statement of facts in support of his summary judgment motion (Docket # 87); defendants' motion to strike certain exhibits and portions of plaintiff's statement of facts in opposition to defendants' summary judgment motion (Docket # 99-100); and plaintiff's motion to strike defendants' expert report (Docket # 108). As discussed herein, the court recommends that defendants' motions be allowed and that plaintiff's motions be denied. The court first addresses the motions to strike, and then, with the summary judgment record properly defined, proceeds to the dispositive motions.

Motions to Strike

Defendants' Motion to Strike Plaintiff's Opposition (Docket # 99)

Defendants have moved to strike much of plaintiff's opposition to defendants' motion for summary judgment. The court begins with a brief background concerning defendants' summary judgment motion, which was timely filed in March of this year.

Plaintiff has submitted various iterations of his opposition to defendants' summary judgment motion. One is a document comprising a thirteen-page "Opposition" and a sixteen-page "Memorandum" and submitted without plaintiff seeking leave to file excess pages. This item was filed twice—initially by itself and then along with accompanying exhibits—on the day plaintiff's opposition was due. See Docket # 55, 56. Supporting plaintiff's opposition are expert reports by Phil Pantano, an Investigator and Collision Damage Analyst, as well as Dennis Andrews, Ph.D., PSP, CECD, WSO-CSS. See Docket # 56-9 – 56-12. Several days later, plaintiff filed separately his "Opposition" (Docket # 58) and "Memorandum" (Docket # 59). About three weeks later, plaintiff submitted (and District Judge Hillman granted) a motion to file excess pages in opposition to defendants' motion. See Docket # 76, 78.

Defendant now seeks to strike two aspects of plaintiff's opposition: (1) the "Statement of Facts" and "Factual Background" included, respectively, within plaintiff's Opposition and Memorandum; and (2) plaintiff's expert reports, which defendants aver (and plaintiff nowhere contests) were provided to defendants for the first time in plaintiff's opposition. Plaintiff has opposed the motion and defendants have submitted a reply. See Docket # 108-09. The court first defines the applicable legal standard and then addresses each request to strike.

2

Plaintiff's Statement of Facts / Factual Background

Legal Standard

The First Circuit in <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791 (1st Cir. 1992) explained that "[i]n operation, summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." <u>Id.</u> at 794 (citing cases). "When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to 'document some factual disagreement sufficient to deflect *brevis* disposition.'" <u>Id.</u> (italics in original) (quoting <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir.1991), <u>cert.</u> <u>denied</u>, 504 U.S. 985 (1992)). The plaintiff's "burden is discharged only if the cited disagreement relates to a genuine issue of material fact. . . . This requirement has sharp teeth: the plaintiff 'must present definite, competent evidence to rebut the motion.'" <u>Id.</u> (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48) (1986) and quoting <u>Mesnick</u>, 950 F.2d at 822). Thus, a "non-movant['s] concise statement must identify what 'specific facts' are in dispute." <u>U.S. S.E.C. v. Nothern</u>, 598 F. Supp. 2d 167, 171 (D. Mass. 2009) (internal citation omitted); <u>see</u> <u>also</u> <u>Brown v. Armstrong</u>, 957 F. Supp. 1293, 1297 (D. Mass. 1997), <u>aff'd</u>, 129 F.3d 1252 (1st Cir. 1997) ("The non-movant's response must 'state what *specific facts* are disputed and prevent summary judgment.'") (quoting <u>Vasapolli v. Rostoff</u>, 864 F. Supp. 215, 218 (D. Mass. 1993), <u>aff'd</u>, 39 F.3d 27 (1st Cir. 1994) (emphasis added in <u>Armstrong</u>).

To this end, the Local Rules make clear that

> [a] party opposing [a summary judgment] motion shall include a
> concise statement of the material facts of record as to which it is
> contended that there exists a genuine issue to be tried, with page
> references to affidavits, depositions and other documentation. . . .
> Material facts of record set forth in the statement required to be
> served by the moving party will be deemed for purposes of the

> motion to be admitted by opposing parties unless controverted by
> the statement required to be served by opposing parties.

L.R. 56.1; see, e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) ("[F]ailure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted and ruling accordingly."). District courts have expanded on the rationale for this procedural mechanism. As stated in Brown, "Local Rule 56.1 was adopted to expedite the process of determining which facts are genuinely in dispute, so that the court may turn quickly to the usually more difficult task of determining whether the disputed issues are material." 957 F. Supp. at 1297.

Courts vary somewhat as to whether, in the event of the non-movant's noncompliance, the movant's facts must be, or merely may be, deemed as admitted. Compare Northern, 598 F. Supp. 2d at 171 ("Any material facts set forth by the moving party that are not 'controverted' by the non-movants' statement *must* be 'deemed for purposes of the motion to be admitted.'") (quoting L.R. 56.1) (emphasis added) with Butters v. Wells Fargo Advisors, LLC, No. 10 Civ. 10072, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012) ("Where a party opposing a motion for summary judgment fails to comply with Local Rule 56.1, the court has the discretion to decide whether to impose the sanction of deeming the moving party's factual assertions to be admitted.") (citing cases). The Local Rule's statement, however, that non-controverted material facts "*will be* deemed for purposes of the motion to be admitted" (emphasis added), supports the more stringent view.

Discussion

In support of their motion for summary judgment, defendants have submitted, in compliance with Local Rule 56.1, a "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried." See Docket # 53. Also in accordance with the Rule, defendants' submission—comprising eighty linear and enumerated

paragraphs—contains "page references to affidavits, depositions and other documentation" within the summary judgment record.  See id.

Standing in stark contrast are the fact sections within plaintiff's opposition.   Plaintiff's twelve-page Statement of Facts amounts to almost the entirety of his "Opposition"—the only other portions set forth the standard for summary judgment and plaintiff's conclusion.  The Statement of Facts comprises: plaintiff's narrative of the accident, a discussion of State Trooper Fox's visit to the scene, plaintiff's summary of each party's accident reconstruction experts' efforts, and arguments that defendant McKinney altered his version of events and that defendants have failed to satisfy their discovery obligations.   See generally Docket # 55 at pp. 1-12.[1]  Plaintiff's "Memorandum" similarly comprises a factual introduction and truncated "Factual Background" section, followed by plaintiff's presentation of "Evidence Against the Defendants' Theory" and a discussion of negligence *per se*, which the court notes is not recognized by Massachusetts law.  See id. at pp. 15-28; see also Juliano v. Simpson, 461 Mass. 527, 532, 962 N.E.2d 175, 179 (2012) ("The Commonwealth does not follow the doctrine of negligence per se . . . .").[2]

Plaintiff's submission speaks for itself: the majority of his asseverations are argumentative and narrative and without any citation to the evidence.  Plaintiff occasionally references exhibits, but largely proceeds with scant citation to the record.  And when he does cite to the evidence, he sometimes does so inaccurately.  As an example, plaintiff cites to pp. 16 and 18 of State Trooper Richard Fox's deposition for his assertion that Trooper Fox "only talked to the Defendant and that was how he gathered the information with regard to how the accident happened."  Docket # 55 at

---

[1] As indicated, the content of this submission has been filed three separate times.  See Docket # 55, 56, 58. The court uses the first such filing (Docket # 55) for ease of reference.

[2] Defendants' motion seeks to strike plaintiff's statements of fact; however, defendants' proposed redlined version of plaintiff's submission strikes as well much of the other sections referenced above.  See Docket # 99-5.

p. 3.  This misrepresents Trooper Fox's testimony, which makes clear that after the accident he made efforts to speak with both drivers—in fact attempting to speak first with plaintiff, who refused to engage—rather than obtain only Mr. McKinney's account of the incident, as plaintiff suggests.  See Docket # 56-5 at p. 3.

Most significantly, although his opposition takes broad-brush swings at, for example, "Defendants' Theory," nowhere does plaintiff directly address defendants' Rule 56.1 Statement with "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried."  This falls well short of the requirement, stated above, that plaintiff's opposition state which *specific facts* are in dispute.  See S.E.C. v. Nothern; Brown v. Armstrong, supra.

Accordingly, the court concludes that the fact sections of plaintiff's opposition (Docket # 55 at pp. 1-12, 15-18) fail to comply with L.R. 56.1.  It therefore accepts defendants' argument that these passages should be stricken from the summary judgment record.  And, because plaintiff thus has not "controverted [defendants' material facts] by the statement required to be served by opposing parties," the corollary (discussed below) is that the facts as set forth by defendants "be deemed for purposes of the motion to be admitted."  See L.R. 56.1.

Plaintiff's Expert Reports

Procedural History

Defendants also seek to strike Mr. Pantano's and Dr. Andrews' expert reports, citing both procedural and substantive grounds.  Some brief history is required to address the former, which constitutes defendants' primary argument.  In August 2015, District Judge Hillman issued an amended scheduling order providing a December 9, 2015 deadline for plaintiff to designate his experts, and scheduling a status conference for November 10, 2015.  See Docket # 37.  On the

latter date, Judge Hillman entered an electronic order that reads:  "ORDER Canceling Deadline. The status conference scheduled for today, (11/10/15) is hereby canceled. The Court will reschedule after all pending motions are ripe."  Docket # 45.  Nowhere did Judge Hillman indicate that the dates in the amended scheduling order were stayed.  But prior filings reflect plaintiff's (mis)understanding that the November 10 order did so.  See Docket # 83 at p.1 ("[T]he cancelation of the November 10, 2015 [conference] . . . put hold on other discovery events.").[3]  Presumably relying upon this misconception, plaintiff failed to timely disclose his experts.

On March 10, 2016, defendants timely moved for summary judgment and, as noted, received plaintiff's expert reports for the first time in plaintiff's opposition to same.  At least once, in January 2016, defendants advised plaintiff that Judge Hillman's order did not cancel any discovery deadlines.  See Docket # 83-5.  Yet it was not until April 28, 2016—months after the applicable deadlines lapsed and, curiously, after plaintiff had filed his own summary judgment motion—that plaintiff moved for an extension of the discovery deadlines.  See Docket # 83. Plaintiff's motion was denied.  See Docket # 96.

Discussion

Fed. R. Civ. P. 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c); see also Fed. R. Civ. P. 37 advisory committee's note to 1993 Amendment (subdivision (c) serves as "a self-executing sanction for failure to make a disclosure required by Rule 26(a)").  Further, "it is the obligation of the party facing sanctions

---

[3] This court previously has rejected plaintiff's attempts to construe the cancellation as some sort of open-ended extension of the discovery period.  See Docket # 96.

for belated disclosure to show that its failure to comply with the Rule was either justified or harmless." Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001).  The court finds plaintiff's failure to be neither.

As to its harm: from the time plaintiff's expert discovery closed in December 2015, defendants have been litigating this case from the position of their adversary not relying upon expert testimony.   Most recently and potently, defendants in their summary judgment motion did not have the benefit of anticipating plaintiff's expert reports, nor, of course, have they had the opportunity to depose plaintiff's experts.   Plaintiff's argument that defendants have not been prejudiced by the delay is flatly wrong.  See Harriman v. Hancock Cty., 627 F.3d 22, 31 (1st Cir. 2010) (late disclosure not harmless when made after defendants moved for summary judgment and after opportunity to depose witnesses) (citing cases).

The court notes plaintiff's representation that the parties' experts conducted inspections in one another's presence, and accordingly that defendants were aware of the prospect of plaintiff's expert disclosures.  Indeed, in Acadia Ins. Co. v. Cunningham, 771 F. Supp. 2d 172 (D. Mass. 2011) the court declined to strike an untimely expert report in part because the moving party "knew of the possibility of [the expert] providing an expert opinion" based on prior disclosures.  See id. at 176-77.  As support, the Acadia court cited Rule 37's advisory committee notes which, in its view, create an exception to the sanction of preclusion where a party has failed to disclose an expert who was known to its adversary.  See id.

For several reasons, the court declines to apply here Acadia's lenient approach.  First, the expert in Acadia had been listed in the non-movant's automatic disclosure.  See Acadia, 771 F. Supp. 2d at 176.  There is no indication here that plaintiff took the step of identifying his experts as potential witnesses.  See Fed. R. Civ. P. 26(a).  Further, the text of the cited committee note

states that "[l]imiting the automatic sanction . . . is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties."  Fed. R. Civ. P. 37 advisory committee's note to 1993 Amendment.  Thus, even if an exception is made for inadvertent omission from automatic disclosures, at bar is not a situation involving no more than an inadvertent omission from a party's Rule 26(a)(1)(A) disclosures; while true that plaintiff's experts should have been named there, ultimately it is Rule 26(a)(2) which governs expert disclosure, and thus the instant analysis.  And finally, this escape valve, at most, limits Rule 37(c)'s *automatic* sanction of preclusion.  Thus, even if this case were to constitute an exception, it would not follow that plaintiff necessarily is insulated from preclusion; only that automatic preclusion would be improper.[4]

Neither are plaintiff's missteps substantially justified.  "A substantial justification is one that 'could satisfy a reasonable person.'"  Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., 295 F.3d 108, 117 (1st Cir. 2002) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  As noted, plaintiff, despite being advised of his misreading of a court order, did not timely move for a clarification of Judge Hillman's November 10, 2015 order, or for an extension of the expert discovery deadline, instead relying on his unilateral interpretation of Judge Hillman's directive and thereby forging for himself an open-ended expert discovery period.  And his opposition to defendant's motion to strike states simply (and unconvincingly) that "[t]o the extent[ ] the plaintiff's disclosures were late, the onus of lateness should be placed on counsel."  Docket # 108 at p. 4.[5]

---

[4] The court declines to further extend the Rule's safe harbor, particularly in light of the First Circuit's observation that the illustrative examples of harmlessness "suggest a fairly limited concept of 'harmless.'" Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006).

[5] The record further reveals defendants' efforts to work with plaintiff's counsel toward the timely and efficient completion of expert discovery.  See Docket # 83-5, 93-5, 93-15.

What emerges is that (1) plaintiff did not timely disclose his expert reports; (2) defendants have suffered harm as a result; and (3) plaintiff's failure is not justified.  Courts have granted preclusion under similar circumstances.  In <u>Cavanagh v. Taranto</u>, 95 F. Supp. 3d 220 (D. Mass. 2015), for example, the court struck an untimely expert report where the plaintiff "supplied a draft expert report only as an exhibit to his opposition to the defendants' summary judgment motion, and supplied the full expert report only in opposition to the motion to strike the draft report."  <u>Id.</u> at 230-31.  As here, the plaintiff in <u>Cavanagh</u> "offered no reasonable explanation for delaying to submit the expert report."  <u>Id.</u> at 229.  The court stressed that "[l]awyers are expected to know the rules governing discovery and motion practice in federal courts and in this district."  <u>Id.</u>  It rejected the plaintiff's explanation for the delay that was premised on a "wrong[ ]" belief that his disclosures were timely.  <u>See id.</u> at 229-30 (quoting <u>Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.</u>, 295 F.3d 108, 117 (1st Cir. 2002)).  Finally, because the plaintiffs' disclosures had "occurred well after the close of discovery and after summary judgment submissions premised on an evidentiary record from which the expert report was absent," the court likewise found plaintiff's delay not to be harmless and accordingly granted the defendants' motion to strike.  <u>Id.</u> at 230-31; <u>see also</u> <u>AVX Corp. v. Cabot Corp.</u>, 251 F.R.D. 70, 78 (D. Mass. 2008) (writing that plaintiff's excuse for late disclosure "concern[ing] the confusion regarding the date for the submission of expert reports. . . . is not well taken" and that late disclosure was not harmless where "[b]oth fact and expert discovery are closed thereby leaving [defendant] in the prejudicial position of having to defend against the calculations without having the opportunity to explore and challenge the basis for the calculations.").[6]

---

[6] As noted, defendants also challenge the substance of plaintiff's reports.  Rule 26 provides that expert reports must include:

Preclusion

For the reasons stated, plaintiff's statements of facts and expert reports are, in a vacuum, ripe for preclusion.  The court must consider, however, whether this sanction is warranted, since it would effectively amount to a dismissal of plaintiff's complaint.

Defendants' summary judgment motion is supported by the statement of undisputed material facts referenced above and a detailed expert report from professional engineers Daniel J. Melcher, P.E. and Thomas N. Rush, P.E. (Docket # 52-10) (the "Melcher Report").  Both convey a similar narrative concerning the cause of the subject accident.   In relevant part, the Melcher Report concludes that

> [plaintiff] lost control of his vehicle and traveled diagonally to the left across all three travel lanes and the left paved shoulder to collide head-on into the left concrete median barrier wall.  The [plaintiff] rotated as a result of this wall contact, experienced a secondary contact between its rear-right corner and the barrier wall, then rebounded into the westbound travel lanes.  There was no physical contact between the [defendants' truck] and the [plaintiff's car] prior to the [plaintiff's] loss of control and initial collision into the median barrier wall.  After the [plaintiff's car] rebounded from the barrier wall, its front end collided with the left-rear axle, wheels, tires, and cargo box of the westbound [defendants'] trailer.  The loss of control

---

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  Mr. Pantano's report is facially inadequate: it is unsworn and unsigned, is not accompanied by a list of publications or a statement of compensation, and provides only "preliminary investigative results"—indeed, the report concludes with, "The gathering of evidence continues."—which are not verified to a reasonable degree of engineering certainty.  See Docket # 58-9, 58-10.  Dr. Andrews' report is somewhat more substantively sound, but it fails to satisfy Rule 26(a)(2)(B)'s fifth and sixth subsections.  See Docket # 58-11, 58-12.

> was not caused by any roadway friction deficiencies or by contact
> with the [defendant's truck].

Docket # 52-10 at p. 4.  Similarly, Defendants' statement of facts offers that "[t]he accident happened after the plaintiff attempted to pass in front of the tractor trailer, spun out, struck a median barrier and then bounced into the trailer."  See Docket # 53 at ¶ 30 (citing Police Report, deposition of Dennis McKinney, Melcher Report, and Dennis McKinney Interrogatory responses).

If plaintiff's expert reports and fact sections are stricken, the summary judgment record only would allow for defendants' theory of causation, which in that instance would be (1) supported by defendants' experts and unrebutted by plaintiff's; and (2) accepted as true in the absence of plaintiff contravening defendants' Rule 56.1 Statement.  Because, as acknowledged by plaintiff, this matter boils down to conflicting versions of how the accident occurred, see Docket # 108 at p. 2, granting defendants' motion to strike therefore would all but dispose of the case. Plaintiff concedes as much at least in relation to the expert reports; indeed, much of his opposition is premised on the notion that preclusion is unwarranted since it likely will result in dismissal.  See Docket # 108 at pp. 5, 12.

The court therefore must determine whether to strike items which on their merits warrant preclusion, but the likely corollary of which is a grant of judgment in defendants' favor.  Although this remedy undoubtedly is "strong medicine," see Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 79 (1st Cir. 2009), the court concludes it is warranted under the circumstances.

First Circuit authority supports this determination.  Both Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72 (1st Cir. 2009) and Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272 (1st Cir. 2006) presented the same set of factors to consider in determining the propriety of an order of preclusion:

(1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

Esposito, 590 F.3d at 78 (citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003); Santiago-Diaz, 456 F.3d at 276-77); see also Santiago-Diaz, 456 F.3d at 276-77 (same) (citing cases)).   As applied,[7] each so-called Macaulay factor but the second emphatically cuts against plaintiff.

The first Macaulay factor assesses the history of the litigation, which here involves numerous failures by plaintiff to meet discovery deadlines and obligations.   Initially, the expert reports were disclosed not a short time after the deadline, but instead some four months late, and even then only as part of plaintiff's opposition to defendants' summary judgment motion.   As noted, in addition to being untimely, Mr. Pantano's report fails to comply with Rule 26(a)(2)(B); among other deficiencies, it provides only "preliminary investigative results," and notes that the "gathering of evidence continues."  See Docket No. 56-9.

This is hardly anomalous: elsewhere throughout this litigation, plaintiff has filed two motions to compel after the close of fact discovery—one of which, quizzically, was submitted after his own summary judgment motion, which itself was submitted after the deadline for dispositive motions.  See Docket # 37, 46, 65, 89.  Three of plaintiff's discovery motions have been denied without prejudice for various procedural insufficiencies, including the failure to certify that plaintiff conferred with opposing counsel before filing.  See Docket # 25, 33, 40, 46, 82.  At least

---

[7] The court notes that Esposito and Santiago-Diaz both concerned late expert disclosures and neither involved motions to strike a statement of facts, as is partially at issue here.  However, the relevant portion of the Circuit's analyses were geared toward the question of whether a court may preclude evidence if doing so would result in dismissal.  The ensuing logic and conclusions may be applied with equal force to both portions of defendants' motion to strike.  Notwithstanding, the analysis that follows primarily considers plaintiff's expert disclosures.

one such motion likely could have been substantially narrowed, if not altogether eliminated, but for plaintiff's failure to confer.  <u>See</u> Docket # 82 at pp. 11-12.  And, as detailed in this court's July 14, 2016 order, plaintiff has failed to comply with a court order in a manner that, from all appearances, betrays a possible attempt to mislead this court.  <u>See</u> Docket # 110.  When ordered to show cause why he should not be sanctioned as a result,[8] plaintiff used the opportunity to lodge complaints about defendants' allegedly improper discovery practices.  <u>See</u> Docket # 114.  Lastly and as discussed below, plaintiff's summary judgment motion is supported by a Statement of Undisputed Facts that, like his opposition to defendants' summary judgment motion, largely fails to comply with Local Rule 56.1 and Fed. R. Civ. P. 56(c).  <u>See</u> Docket # 66, 87.  With such a robust history of consistent noncompliance, this matter is distinguishable from <u>Esposito</u>, where the Circuit reversed an order of preclusion that, among other things, arose from a single instance of a party's failure to comply with a discovery order.  <u>See</u> 590 F.3d at 79.

The third <u>Macaulay</u> factor considers the sanctioned party's justification (or lack thereof) for its late disclosure.  Stated otherwise, the court addresses here why plaintiff has failed either to comply with the applicable deadlines, or, as he previously has done, to move to extend them.  Plaintiff has offered no meaningful justification for the failure to timely disclosure his experts, stating only that the fault lies with counsel, not with the client.  <u>See</u> Docket # 108 at p. 4.  This is no justification at all.

Elsewhere, in the context of a motion to compel, plaintiff has argued that he believed Judge Hillman's November 10, 2015 order to have canceled all discovery deadlines.  This notion likewise does not withstand scrutiny.  The Order states: "ORDER Canceling Deadline.  The status conference scheduled for today, (11/10/15) is hereby canceled.  The Court will reschedule after all

---

[8] The court ultimately imposed a sanction of a portion of defendants' fees incurred in opposing one of plaintiff's motions.  <u>See</u> Docket # 117.

pending motions are ripe." <u>See</u> Docket No. 45.  I find plaintiff's suggested interpretation to be implausible; the wording makes clear that the cancelation was limited to the status conference. Further, when Judge Hillman previously granted the parties' joint motion to enlarge deadlines, new dates were issued.  <u>See</u> Docket # 37.  It is unreasonable to infer, as plaintiff apparently did, that by canceling the status conference, Judge Hillman essentially authorized an open-ended discovery period.  At a minimum—especially given the importance of the evidence at issue—it would have been prudent for plaintiff to inquire with Judge Hillman's session about the scope of the November 10, 2015 order; if not in November, then perhaps in January 2016 when defendants advised plaintiff that in their view Judge Hillman had not canceled discovery deadlines, <u>see</u> Docket 83-5, or shortly thereafter, when defendants timely served their own expert disclosures.  <u>See</u> Docket No. 52-10 (disclosure dated February 8, 2016).  In sum, plaintiff offers no justification for his failure to comply with the expert discovery deadline.

The fourth <u>Macaulay</u> factor considers the opponent-party's prejudice and surprise associated with the late disclosure.  For several reasons, it is clear that defendants have been prejudiced by plaintiff's late disclosure.  First, with the passing of the expert discovery deadline, defendants were led to strategize their defense from the perspective that plaintiff was not going to offer expert evidence.  It is possible that defendants moved for summary judgment specifically on the strength of this understanding; their motion expressly notes that plaintiff had made no expert disclosures.  <u>See</u> Docket 52 ¶¶ 69-70.  As such, if plaintiff's failure were excused, defendants would be required to withdraw their current motion for summary judgment, depose plaintiff's experts, perhaps have their own experts prepare amended expert reports based on plaintiff's expert reports, and then—if still deemed prudent—file a new motion for summary judgment.

The costs for these efforts theoretically could be transferred to plaintiff, although there is no indication that plaintiff has made any such offer.  But even such an arrangement would not remedy the prejudice suffered by defendants as a result of plaintiff obtaining defendants' timely disclosures but not vice versa.  As discussed in Judge Woodcock's dissent in Esposito, such gamesmanship should not be rewarded:

> Implicit in these concerns is the effect of Esposito's non-disclosure on the sequential disclosure process mandated by the scheduling order and the resulting unfairness to the defendants.  By Esposito's neglect, the party with the burden of proof successfully shifted the burden of disclosure.  This is what the district judge was referring to when he wrote that, if noncompliance with scheduling orders resulted in mere fines or costs, "[p]laintiffs might seek to avoid initial expert disclosure in order to gain unfair advantage in litigation."
>
> The district court's second concern has several angles. First, the district judge was troubled that if Esposito's failure were excused, future plaintiffs, emboldened by the lenient treatment of Esposito, might make a cold-blooded judgment that the advantage of receiving the defense expert's opinions first exceeds the disadvantage of paying court-ordered fines and costs. The district judge worried that to some the fines or sanctions might be "a price worth paying."

Esposito, 590 F.3d at 83 (Woodcock, J., dissenting).  In sum, defendants have suffered significant prejudice in the form of litigating this matter—including preparing a summary judgment motion— in the absence of even the prospect of expert discovery from plaintiff, and the court finds the potential remedy of imposing (further) costs and fees insufficient to level the playing field.

The fifth Macaulay factor assesses the late disclosure's impact on the district court's docket.  Here, the disclosure would substantially delay the case.  First, as noted, both Mr. Pantano's and Dr. Andrews' reports suffer from substantive deficiencies, with the former offering only "preliminary investigative results," and concluding that "the gathering of evidence continues."  See

footnote 6, supra; Docket # 56-11.  Accordingly, for his opinions to pass evidentiary muster, Mr.

Pantano would have to prepare a final report that in this and other respects complies with Rule

26(a)(2)(B).   As noted, defendants then would need the opportunity to review the expert

disclosures and, if they chose, depose each expert.  It is likely that defendants' experts would need

to amend their own reports to address matters raised by Mr. Pantano and Dr. Andrews.

The upshot would be a re-opening of expert discovery and thus, a grant to plaintiff of the

relief that this court has already denied: a further enlargement of the expert discovery deadline.

See Docket No. 96.  Re-opened expert discovery then would be followed by an opportunity for the

parties to re-file their summary judgment papers.  All told, it would be months before this case

could be disposed, an arrangement that effectively would afford plaintiff an enlargement of time

of at least ten months beyond the December 9, 2015 expert disclosure deadline that Judge Hillman

had set in July 2015.

Beyond the impact on the instant action, I also consider the effect of late disclosures on the

court's docket generally.  See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639,

643 (1976) (discovery sanctions intended "not merely to penalize those whose conduct may be

deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the

absence of such a deterrent").[9]  I find this a serious concern.  First, to overlook plaintiff's delay

would substantially undermine the letter and spirit of the amendments to the federal rules.  Rather

than encouraging vigilance and compliance, any remedy short of preclusion would encourage

others litigants to flout deadlines, safe in the belief that courts will not enforce their own scheduling

---

[9] This factor is particularly salient in the context of recent amendments to the Federal Rules of Civil
Procedure.  The mandate that the rules should be "construed, administered, and employed by the court and
the parties to secure the just, speedy and inexpensive determination of every action and proceeding," see
Fed. R. Civ. P. 1, in my view, requires that a court not only set deadlines, but thoughtfully apply the federal
rules to enforce deadlines.  In this regard, Rule 37(c) is unambiguous.  It mandates prelusion for discovery
violations (as occurred here) unless substantially justified or harmless (as they were not).

orders.  See id. at 643 (suggesting that dismissal as a sanction may prevent other litigants from "feel[ing] freer than we think . . . they should feel to flout other discovery orders of other district courts").  Second, as the Court of Appeals has noted, "disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)."  Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002) (citing Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987)).  Finally, this court expects that when a motion is granted to change deadlines in a manner jointly proposed by the parties—as occurred here, see Docket # 35-36—the parties will make some effort to comply with such deadlines.  See id. at 47 ("When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline.") (citing Mendez v. Banco Popular de P.R., 900 F.2d 4, 6 (1st Cir. 1990)).

Of course, the second Macaulay factor—plaintiff's need for the precluded evidence—militates in his favor, as there is no questioning plaintiff's need for the expert reports.  Indeed, being that the parties appear to agree that this case hinges on the question of causation—an issue addressed by both parties' experts—preclusion would render it all but impossible for plaintiff to sustain his burden of proof, almost inevitably resulting in a grant of summary judgment for defendants and dismissal of plaintiff's case.  Preclusion thus becomes essentially synonymous with dismissal, and as a result, stands in tension with the well-settled preference for cases to be decided on the merits.  See, e.g., Boston Cab Dispatch, Inc. v. Uber Techs., Inc., No. 13 Civ. 10769, 2014 WL 1338144, at *35 (D. Mass. Feb. 28, 2014) (citing Rodi v. Southern New England School of Law, 389 F.3d 5, 20 (1st Cir. 2004)), report and recommendation adopted in part, rejected in part, 2014 WL 1338148 (D. Mass. Mar. 27, 2014).

In Esposito, this consideration carried the day.  The court noted that the justification for a sanction carrying the force of dismissal "must be comparatively more robust" and "[a]fter

18

considering the other relevant factors described above, [concluded] that the circumstances here do not justify such strong medicine." 590 F.3d at 79 (citing cases). But as noted, <u>Esposito</u> is distinguishable on the critical ground that it was "not a case of a party repeatedly balking at court-imposed deadlines" but instead involved a single oversight. <u>Id.</u> Further, <u>Esposito</u> decided not to strike despite expressly acknowledging certain factors (weighing in favor of preclusion) which are present here: plaintiff "never offered a legitimate reason for his late disclosure"; defendants "obviously went through the pains of preparing a dispositive summary judgment motion premised on Esposito's lack of an expert in an expert-dependent case"; and "Esposito's failure to disclose his expert by the scheduled date had a clear effect on the district court's docket." <u>Id.</u>[10] Notwithstanding these considerations, the Circuit ultimately could not abide "a fatal sanction levied for a single oversight," <u>id.</u>, which as noted, is not the case here.

Santiago-Diaz sharpens the point. There, as here, "the plaintiff's need for expert testimony cuts in her favor. The remaining factors, however, all cut in the opposite direction." 456 F.3d at 277. The Circuit there upheld preclusion of the plaintiff's expert report, even though doing so "effectively end[ed] the matter." <u>Id.</u> at 278 ("Having concluded that the district court's preclusion of the plaintiff's expert evidence was well within its discretion, it follows, virtually a fortiori, that the lower court did not err in dismissing the action."); <u>see also</u> Cavanagh, 95 F. Supp. 3d at 230-31 (striking untimely expert report and granting summary judgment for defendants).[11]

These considerations leave the court with a close and—in light of what is at stake, difficult—determination. In balancing the foregoing, however, I am persuaded that preclusion is

---

[10] The court notes that this case, like <u>Esposito</u>, does not appear to involve "an act of calculated gamesmanship on the part of the sanctioned party." 530 F.3d at 79.

[11] It is noted that <u>Cavanagh</u> added that "even if considered[, the expert] report would not forestall summary judgment for the defendants." 95 F. Supp. 3d at 231-32.

appropriate, despite the consequences of such an order.  Plaintiff has repeatedly flouted his discovery obligations and for this court to excuse his conduct in order to protect an opportunity for a merits-based determination would not only reward such conduct, but also would disregard all but the second of the <u>Macaulay</u> factors, diminishing a five-part test to a single factor.  <u>See</u> <u>Harriman</u>, 627 F.3d at 32 ("Reversals based on a sanctioned party's need for precluded evidence are rare, and seldom based on that factor alone.").  Denying preclusion would be unfair to defendants, involve a disproportionate and undeserved exercise of leniency, and undermine the efforts of the Rules Committee and this and other courts to effect change in federal civil practice. Lastly, though plainly damaging to plaintiff, I do not think an order of preclusion is unfair.  To the contrary, given plaintiff's consistent litigation (mis)conduct, I find the only equitable resolution of this issue to entail an order of preclusion.  That plaintiff failed to exercise better judgment with respect to such important evidence is unfortunate, but not excusable.  I therefore recommend allowing defendants' motion to strike (Docket # 99).

<u>Defendants' Motion to Strike Plaintiff's Statement of Facts in Support of Plaintiff's Motion for Summary Judgment (Docket # 87)</u>

Defendants also have moved to strike plaintiff's Undisputed Statement of Facts ("Plaintiff's Facts") submitted in support of plaintiff's summary judgment motion.  <u>See</u> Docket # 66, 87.  Plaintiff has not opposed the motion.

Plaintiff's Facts suffer from the defects as described above.  Globally, the statement is not "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried," <u>see</u> L.R. 56.1, and largely is argumentative and conclusory rather than fact-based; resembling a summary judgment memorandum more than a proper Rule 56.1 Statement.  Most glaringly, save for some select entries and reproductions of portions of depositions, Plaintiff's Facts lack "page references to affidavits, depositions and other

documentation." See id.  Notably, "[f]ailure to include such a statement constitutes grounds for denial of the motion."  Id.

Defendants' motion divides Plaintiff's Facts into several categories.  The first is statements for which there is no citation to the record.  See, e.g., Plaintiff's Facts at ¶¶ 3, 8, 9, 10.  It is clear that these statements are to be afforded no evidentiary weight.  See L.R. 56.1.

Next are sections in which plaintiff references the reports of Mr. Pantano and Dr. Andrews. See, e.g., Docket # 66 at ¶¶ 55-56.  As noted, these were not provided to defendant until plaintiff opposed defendants' summary judgment motion, approximately four months after the deadline for expert disclosures.  See Docket # 37.  Plaintiff relatedly cites to a series of photographs which defendants represent were not previously disclosed to them.  Docket # 87 at p. 5; see, e.g., Docket # 66 at ¶¶ 4, 11, 12.  Plaintiff has not opposed this motion to strike, and so has not rebutted this contention, which—particularly in light of plaintiff's conduct throughout this litigation—the court will accept as true.  Accordingly, the court determines these portions of Plaintiff's Facts rely upon documentary and expert materials that were not timely disclosed.

Although the considerations for preclusion are set forth above, the present calculus is somewhat different: at issue here is not plaintiff's opposition to defendants' motion, but instead his own effort to affirmatively wield materials that were not properly disclosed.  Accordingly, it does not necessarily follow that because these items were precluded for purposes of plaintiff's opposition, they must be precluded here as well.

With that said, the change in perspective does not mandate a different result.  Initially, the analyses pertaining to the first and last Macaulay factors cited above—the history of the litigation and the impact on the court's docket—are identical.  Plaintiff's need for the precluded evidence is similar—in light of defendants' expert reports, this evidence is all but required for summary

judgment to resolve in plaintiff's favor—but the consequence here is less dire: preclusion will mean not that plaintiff's case is dismissed; only that plaintiff will not prevail as a matter of law on the basis of his expert testimony.  As to prejudice, it cannot be said within this context that defendants suffered harm by way of preparing a summary judgment motion absent plaintiff's expert disclosures.  However, the impact of plaintiff's non-actions upon defendants' litigation strategy is just as potent here.  Finally is plaintiff's justification for the late disclosure: he has not opposed defendants' motion and so, within the context of his own motion, he has offered none. Weighing these factors (and in conjunction with the reports' substantive deficiencies described above), the court concludes, as above, that preclusion of these materials is proper.

Elsewhere are statements which defendants refer to as plaintiff's "[o]wn [o]pinions, [c]haracterizations and [a]rguments."  Docket # 87 at p. 6.  Although the court does not agree that every passage defendants cite falls into this category, such statements do litter Plaintiff's Facts; examples include contentions varying from defendants allegedly changing their version of events, to Mr. McKinney only being permitted to drive while wearing glasses, to a sweeping characterization that Mr. Melcher "disagreed with [the] State Trooper's Report."  See Docket # 66 at ¶¶ 27, 28, 30, 69.  To the extent portions of Plaintiff's Facts rely on his own opinions and characterizations, rather than evidence in the record, preclusion once again is proper.  See, e.g., Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) (writing that "the Court can . . . disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement" and citing cases striking argumentative or conclusory portions of Rule 56.1 statements).

Finally, defendants address statements concerning Smith Transport's accident history and Mr. McKinney's medical qualifications which, in their view, are irrelevant and inadmissible.

Defendants' relevance argument fails.  Even assuming these statements to be irrelevant (on which the court here does not opine), this would not be a ground to strike them from the summary judgment record.  See, e.g., Koken v. Auburn Mfg., Inc., No. 02 Civ. 83, 2004 WL 51099, at *6 n.10 (D. Me. Jan. 9, 2004) (irrelevance is "not [an] especially good reason[ ] to file a motion to strike); McLaughlin v. McDonald's Corp., 203 F.R.D. 45, 50-51 (D. Mass. 2001) (denying motion to strike on relevancy grounds because "[t]o the extent that [movant] relies on statements of fact of limited relevancy, such statements simply would not create a genuine issue of material fact").  Any objections to these items' relevance are the province of a memorandum in opposition to plaintiff's summary judgment motion, not a motion to strike.  See Koken, 2004 WL 51099, at *6 n.10 ("[T]he irrelevance, immateriality, or impropriety of a statement of fact can be explained in the associated summary judgment memorandum.").

Defendants' hearsay argument, however, it well-founded.  Initially, this is a proper ground upon which to strike a statement of facts.  See Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998) ("Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.") (citing Fed. R. Civ. P. 56(e); FDIC v. Roldan Fonseca, 795 F.2d 1102, 1110 (1st Cir. 1986)); see also Koken, 2004 WL 51099, at *6 n.10 (citing inadmissible hearsay as ground for motion to strike).  Plaintiff's statements 45 and 49 refer to and rely upon Exhibits V and W, which appear to be printouts from the Department of Transportation website and therefore are hearsay.

Here the "public records" hearsay exception becomes potentially relevant.  See Fed. R. Evid. 803(8).  However, "[a]lthough public records fall within the hearsay exception for 'public records' in Fed. R. Evid. 803(8), they must be properly authenticated under Fed. R. Evid. 901 or 902."  Hernandez v. Wal-Mart Puerto Rico, Inc., No. 09 Civ. 1379, 2010 WL 4273927, at *3

(D.P.R. Oct. 29, 2010) (quoting <u>Sanchez v. Davila</u>, 2010 WL 728377 (D.P.R. 2010)).  It is true that Rule 901 allows for authentication through, for example, "[t]estimony that an item is what it is claimed to be" and that plaintiff writes that the exhibits were "used in Smith Representative David Redline's deposition."  <u>See</u> Docket # 65-1.  However, the portions of Mr. Redline's deposition attached to plaintiff's motion do not appear to discuss these documents and so, on this record, the court cannot deem these materials authenticated by Mr. Redline's testimony.  Neither has plaintiff offered any evidence that the "purported public record or statement is from the office where items of this kind are kept." Fed. R. Evid. 901(b)(7)(B).  Accordingly, the court accepts the defendants' argument that these items are inadmissible hearsay.

The same is not true, though, of McKinney's medical records and commercial driver's license.  Medical records, despite being hearsay, generally are admissible under Rule 803(6), assuming they are properly authenticated.  <u>See, e.g.</u>, <u>Falconer v. Penn Mar., Inc.</u>, 421 F. Supp. 2d 190, 203 (D. Me. 2006).  The records here bear satisfactory certifications, <u>see</u> Docket # 65-3 at p. 3; 65-23 at p. 60, and so they are admissible.[12]  Mr. McKinney's commercial driver's license likewise is admissible as a public record.  <u>See, e.g.</u>, <u>United States v. Kuzmenko</u>, No. 12 Cr. 62, 2014 WL 1334003, at *3 (E.D. Cal. Apr. 3, 2014) ("Drivers' licenses are admissible under the public records exception to the rule against hearsay, pursuant to FRE 803(8).") (citing <u>United States v. Cuesta</u>, No. 06 Cr. 40, 2007 WL 2729853, at *15 (E.D. Cal. Sept. 19, 2007), <u>aff'd</u>, 286 F. App'x 358 (9th Cir. 2008)).[13]

---

[12] Mr. McKinney's medical certificate is part of these properly-authenticated records.  <u>See</u> Docket # 65-3 at pp. 3, 16.

[13] Although not entirely clear, it appears Mr. McKinney properly authenticated his commercial license at his deposition.  <u>See</u> Docket # 52-2 at p. 2; 56-2.

In sum, although not every argument advanced by defendants prevails, the court finds much of Plaintiff's Facts fail to satisfy Rule 56.1 and that preclusion is an appropriate remedy. Specifically, in accordance with the foregoing discussion, the court strikes from the record those portions of Plaintiff's Facts that: are not supported by citations to the record; rely upon plaintiff's expert reports or are related materials that were not timely disclosed; are argumentative and and/or conclusory in nature; or are premised upon inadmissible hearsay.

<u>Plaintiff's Motion to Strike</u>

Plaintiff has moved to strike the Melcher Report, primarily on the basis that it improperly relies upon the State Trooper's impressions in reaching its conclusions. <u>See</u> Docket # 108 at pp. 12-14. Plaintiff also takes issue with defendants' experts "cherry pick[ing]" Mr. McKinney's statements to determine his speed at the time of the collision. <u>See</u> <u>id.</u> at p. 14. Defendants' opposition states that plaintiff's motion comes approximately five months after his receipt of the Melcher Report. <u>See</u> Docket # 109 at p. 5. Plaintiff has not replied.

Plaintiff's argument is without merit. He argues, for example, that "*[t]he trooper's* conclusions are simply inadmissible at trial" for their failure to satisfy Rules 702, 703, or <u>Daubert</u>. <u>See</u> Docket # 108 at p. 13 (emphasis added). But these requirements govern the admissibility of expert evidence—in this case, the Melcher Report—*not* the materials that factor into an expert's determinations. To have it his way, plaintiff would ask that every item considered by expert convey scientific reliability, peer review, and other elements which are relevant only to the admissibility of expert testimony. This, of course, is incorrect. Had plaintiff argued that the *Melcher Report* lacks these properties, his motion, at bottom, would be trained toward the right target. As it stands though, it is not. Further, the Melcher Report's reliance on Trooper Fox's impressions is entirely proper, as those impressions likely would be admissible at trial. <u>See</u> <u>Cronin</u>

v. McCarthy, 22 Mass. App. Ct. 448, 448, 494 N.E.2d 411, 412 (1986) (no error where "two police officers who had investigated the accident were allowed to give their respective opinions [at trial] that, at the point of impact, the [plaintiff's] vehicle was in the defendant's lane.").

Finally, the Melcher Report makes clear that the conclusions therein rested on much more than Trooper Fox's statements. The report lists seventeen independent bases for its findings (some of which contain sub-bases); the Police Report and Trooper Fox's deposition are two of many. Thus, even if the report's reliance on Trooper Fox was misplaced—which it was not—this would fall far short of the remedy sought by plaintiff. Along similar lines, the proper remedy to defendants' experts' purported "cherry picking" would not be preclusion; to the extent the Melcher Report does what plaintiff contends, the court simply may afford lesser weight to the portions of the report which improperly select from the facts. Plaintiff's motion therefore is denied.

Summary Judgment Motions

Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory

allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quotation omitted).

Discussion

In light of the above discussion of the motions to strike, the court considers the motions for summary judgment on a somewhat limited record. Specifically, concerning defendants' motion, for the reasons stated the court will consider defendants' Statement of Facts and the Melcher Report, and will disregard the portions of plaintiff's opposition that fail to comply with Local Rule 56.1, as well as plaintiff's expert reports. Similarly, the court does not consider portions of Plaintiff's Facts which fail to comply with the Local Rules. See supra.

As noted, the parties seem to agree—as does the court—that the core question in this car accident case is causation. The complaint alleges that the defendants' negligence caused plaintiff's injuries and that plaintiff did not contribute to the accident. See Docket # 1-2 at ¶¶ 10-11. Defendants deny these allegations. Docket # 4 at ¶¶ 10-11. "With respect to causation, '[t]he plaintiff[ ] must show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause . . . .'" Alford v. Dep't Of Transp., 85 Mass. App. Ct. 1105 (2014) (quoting Corsetti v. Stone Co., 396 Mass. 1, 23-24 (1985)). "The plaintiff's burden of proving causation is an affirmative one that cannot 'be left to surmise, conjecture or imagination. There must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts.'" Coyle v. Wrightson, 78 Mass. App. Ct. 1128 (2011) (quoting Bigwood v. Boston & N. St. Ry. Co., 209 Mass. 345, 348 (1911)); e.g., Williams v. Techtronic Indus. N. Am., Inc., No. 12 Civ. 11502, 2014 WL 2865874, at *6 (D. Mass. June 23, 2014) (summary judgment appropriate where plaintiff proffered

insufficient causation evidence to proceed to trial), aff'd sub nom. Williams v. Techtronic Indus. of N. Am., Inc., 600 F. App'x 1 (1st Cir. 2015).

On the record described above, plaintiff cannot sustain his burden.  The evidence (as presented by defendants and in effect uncontroverted by plaintiff) supports defendants' assertion that "[t]he accident happened after the plaintiff attempted to pass in front of the tractor trailer, spun out, struck a median barrier and then bounced into the trailer."  Docket # 53 at ¶ 30.  This is reflected in numerous places: the police report states that plaintiff's "sudden, sharp movements combined with the high speed caused [plaintiff] to lose control of his vehicle, which veered sharply to the left and struck the concrete median divider headon."  Docket # 52-12.  Defendants' answers to plaintiff's interrogatories convey a similar narrative.  See Docket # 52-5 at ¶ 17.[14]  Because this account of the accident appears supported by the evidence and has not been "controverted by the statement required to be served by [plaintiff], it is accepted as true.  See L.R. 56.1; Ruiz Rivera, 209 F.3d at 28.

This part of the summary judgment record alone likely would warrant summary judgment in defendants' favor.  But it is the Melcher Report that eliminates any doubt as to the plaintiff's inability to establish causation.  The Melcher Report's conclusion as to the cause of the accident is stated above, see supra (quoting Docket # 52-10 at p. 4), and is consistent with the account presented in defendants' Statement of Facts.  In short, both state that plaintiff's car made initial contact with the median, and only afterwards bounced into defendants' truck, which at no point caused plaintiff to lose control of his car.  See Docket # 52-10 at p. 4.

I find the Melcher Report's findings to be well-founded.  They are based on a thorough review of the evidence, including deposition testimony, physical inspections of the vehicles and

---

[14] Defendants also cite to pp. 117-119 of McKinney's deposition transcript; however, those pages are not attached as an exhibit to their motion.

accident site, pleadings, and forensic analysis.  The report makes clear that both the damage to the vehicles and the parties' testimony support the notion that the contact between the two vehicles followed plaintiff's initial and unilateral impact with the median.  Id. at pp. 23-24.  The report is unequivocal that "the laws of physics and the physical evidence are conclusive to a reasonable degree of engineering certainty that there was no other collision that occurred between the Freightliner and the Kia."  Id. at p. 24.

Because plaintiff's expert reports were stricken, he has (in effect) presented no contrary expert opinion as to the cause of the accident.  I therefore am persuaded by the findings of the Melcher Report that the collision between the two vehicles was not due to defendants' negligence, but instead occurred only after plaintiff's vehicle rebounded off the median and into defendants' truck.  See id. at p. 3.  On these facts, plaintiff cannot sustain his burden of demonstrating "that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause."  Alford, 85 Mass. App. Ct. at 1105 (quoting Corsetti, 396 Mass. at 23-24).  Judgment in favor of defendants thus is warranted.  See, e.g., Denaro v. 99 Rest., Inc., 2002 Mass. App. Div. 195 (Dist. Ct. 2002) (affirming summary judgment for defendant where "[t]he plaintiff advanced no expert report, affidavit or testimony as to causation in opposition to the defendant's summary judgment motion"); Morway v. Kentucky Fried Chicken, No. 03 Civ. 00666, 2005 WL 2461975, at *2 (Mass. Super. July 21, 2005) ("In the absence of any expert reports or affidavits [establishing causation], the plaintiff's evidence is insufficient as a matter of law to raise a reasonable inference in her favor on the issue of causation.") (citing Monahan v. Economy Grocery Stores Corp., 282 Mass. 548, 550-51 (1933)).

Three final notes: first, although the Melcher Report is substantively sound, it bears mention that it does not fully comply with the Requirements of Rule 26.  Namely, defendants have

not provided a list of cases within the past four years in which Mr. Melcher gave testimony, or a statement of compensation for the testimony in this case.  <u>See</u> Docket # 52-10, 52-22. Notwithstanding, I do not find these shortcomings to be fatal, and so I do not view this as a ground to disregard or discredit the report, which otherwise is in compliance with the federal rule and represents what appears to be a sound and detailed analysis of the accident.

Second, as indicated, the determination that summary judgment is warranted in favor of defendants plainly is predicated on the striking of plaintiff's opposition and expert reports.  In the event the Reviewing Court disagrees with the striking of those materials, judgment as a matter of law does not follow.  Rather, if plaintiff's opposition is not stricken, then the record will contain each party's respective theory for the cause of the accident, which will, in that instance, be supported by expert reports on both sides.  Summary judgment then would be improper.  <u>See, e.g.</u>, <u>Cortes-Irizarry v. Corporacion Insular De Seguros</u>, 111 F.3d 184, 191 (1st Cir. 1997) (citing cases indicating summary judgment improper where experts disagree on critical issues such as causation); <u>Quinones v. Metro Santurce, Inc.</u>, No. 12 Civ. 1658, 2014 WL 4930913, at *3 (D.P.R. Sept. 30, 2014) ("In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question [of proximate causation] is one for the jury.") (internally quoting <u>Marshall v. Pérez Arzuaga</u>, 828 F.2d 845, 849 (1st Cir. 1987)).

Finally, it follows from the foregoing that plaintiff cannot sustain his burden on his own summary judgment motion.  As discussed, the bulk of his Plaintiff's Facts fails to comply with Rule 56.1, which alone "constitutes grounds for denial of the motion."  <u>See</u> L.R. 56.1.  Much of plaintiff's motion concerns Mr. McKinney's purported failure to wear glasses at the time of the accident, and while one medical examiner's certificate indicates corrective lenses, plaintiff has not

demonstrated Mr. McKinney's not doing so was causative.[15]  Also fatal to plaintiff's motion is the

absence of an expert affidavit establishing defendants' actions as the cause of the accident.  See,

e.g., Morway, supra.

**CONCLUSION**

For the reasons stated herein, I recommend that the Court issue an order:

- Allowing defendants' motion to strike plaintiff's statement of facts in support of
  plaintiff's motion for summary judgment (Docket # 87);

- Allowing defendants' motion to strike certain exhibits and portions of plaintiff's
  statement of facts in opposition to summary judgment (Docket # 99);

- Denying plaintiff's motion to strike defendants' expert report (Docket # 108);

- Allowing defendants' motion for summary judgment (Docket # 52); and

- Denying plaintiff's motion for summary judgment (Docket # 70).

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[15] As noted, plaintiff also puts forth a theory of negligence *per se*, which is not recognized by Massachusetts law.  See Juliano, 461 Mass. at 532.